## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRITNEY LAWRENCE, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>                       v.<br><br>TD BANK, N.A.,<br><br>                 Defendant. | CASE NO. 1:17-cv-12583<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff Britney Lawrence (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by and through Plaintiff's undersigned counsel, and brings this action against Defendant TD Bank, N.A. (hereinafter "TD Bank" or "Defendant") alleging, upon personal knowledge as to Plaintiff's individual actions and upon information and belief and/or counsel's investigations as to all other matters, the following:

## INTRODUCTION

1.     In its Personal Deposit Account Agreement (hereinafter "PDAA" and attached hereto as Exhibit A) and its "Important Information for Consumers about your TD Bank Checking Account" brochure (attached hereto as Exhibit B) incorporated by reference therein (collectively referred to as "TD Bank Agreements"), Defendant TD Bank promises its customers who do not opt into TD Bank's Debit Card Advance Program that it will decline certain debit card transactions.  Specifically, TD Bank promises that non-recurring debit card transactions that will lower the balance below zero will not be approved and overdraft fees will not be charged. TD Bank has conceded this practice in published Account Guides.  But as to one very significant

type of business, one for which it handles literally millions of transactions each month, TD Bank has decided to accept such transactions, and charge related overdraft fees, even though customers have not opted into Debit Card Advance.   This business is ride-sharing, namely Uber Technologies, Inc. ("Uber") and Lyft, Inc. ("Lyft") rides.  When TD Bank customers use their debit card to pay for rides with Uber or Lyft – rides that are by their very nature one-time transactions and non-recurring – TD Bank approves the transactions regardless of the customer's opt-in status.

2.      On or about March 15, 2016, TD Bank charged Plaintiff two $35.00 overdraft fees when Plaintiff used her debit card to pay for one-time ride-share transactions that overdrew her account even though such fees are only authorized under the TD Bank Agreements for "recurring" debit card transactions.   Accordingly, Plaintiff seeks to recoup the fees Plaintiff paid and to represent all individuals in the United States who were charged similar overdraft fees on ride-share transactions in violation of TD Bank's Agreements.

3.      Plaintiff asserts this action pursuant to Fed. R. Civ. P. 23, on behalf of Plaintiff and all others similarly situated, for damages and other relief arising from TD Bank's routine practice of charging standard overdraft fees on one-time debit card transactions with Uber and/or Lyft, in violation of its contracts with accountholders.

## PARTIES

4.      Plaintiff is a citizen and resident of the State of Connecticut and has had a checking account with Defendant TD Bank at all times material hereto.

5.      Defendant TD Bank, a subsidiary of Toronto-Dominion Bank of Canada, is a national bank chartered and supervised by the federal Office of the Comptroller of Currency.  TD Bank's main office is located in Cherry Hill, New Jersey, with Delaware designated as its

location in its organizational certificate.  TD Bank has approximately 1300 branches in the United States.  By assets, TD Bank is now ranked in the top 10 of U.S. banks, providing banking services to its 6.5 million east coast customers extending from Maine to Florida through its 1,300 branches and 1,900 ATM machines.

## JURISDICTION

6.     This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (a) the aggregated claims of the putative members of the Classes exceed $5 million, exclusive of interest and costs; (b) there are at least 100 members of the putative Classes; and (c) at least one of the members of each of the proposed Classes is a citizen of a different state than Defendant.

7.     TD Bank regularly and systematically provides retail banking services through the State of New Jersey, including in this district, and provides retail banking services to its customers, including members of the putative Classes.  Additionally, based on information and belief, the decisions relating to developing, marketing, and implementing the actions complained of herein originated from TD Bank in its main office located in Cherry Hill, New Jersey.  For all plans and decisions that originated at TD Bank business locations outside of New Jersey, those plans and decision required approval from TD Bank's Cherry Hill, New Jersey headquarters.  For these reasons, TD Bank is subject to the jurisdiction of this Court.

## VENUE

8.     Venue is likewise proper in this district pursuant to 28 U.S.C. § 1391 because TD Bank is subject to personal jurisdiction in this Court and regularly conducts business within this district through its main office and numerous branches.

## OVERVIEW

9.    Debit card transactions can be either "one-time" or "recurring."  One-time transactions are unique transactions not scheduled to regularly reoccur.  Recurring transactions, on the other hand, are scheduled to regularly reoccur.  Recurring transactions are often automatically charged on a prearranged schedule.  Examples of recurring transactions include gym memberships, cable bills, cell phone bills, utility bills, monthly magazine subscriptions, streaming content service memberships like Netflix, and insurance premiums.

10.    Lyft and Uber are well known ride-sharing services that are used across the country.  There is no mystery about what their business is: one-time ride-shares.  Lyft and Uber are not subscription services wherein customers pay a monthly fee.  Such transactions do not occur automatically, do not occur on a prearranged schedule, are not for a set amount, and only occur on a per-ride basis.

11.    Even though TD Bank knows that Lyft and Uber customers pay per ride, and do not pay recurring pre-arranged fees, it repeatedly charges overdraft fees for these one-time debit card transactions.

12.    TD's PDAA (the version dated June 2013 appears to be applicable and is cited hereinafter and attached as Exhibit A) states, in pertinent part:

Overdrafts

An overdraft is an advance of funds that greater than the amount that has become available in accordance with the Bank's Funds Availability Policy, made by us to you, at our sole discretion.  Overdrafts may include advances to cover a check, in-person withdrawal, ATM withdrawal, or a withdrawal by other electronic means from your Account. We may demand immediate repayment of any overdraft and charge you an overdraft fee (see Personal Fee Schedule).

You may overdraw your account by up to $5 per day without being charged a fee. If you negative available balance exceeds $5 at the end of the day, we will charge you for each transaction that overdraws your account (see "Important Information

for Consumers about your TD Bank Checking Account" brochure for more information).

Exh. A, p. 14.

13.    "Important Information for Consumers About Your TD Bank Checking Account,"

(attached as Exhibit B) which is incorporated by reference in the PDAA, states, in pertinent part:

**WHAT YOU NEED TO KNOW ABOUT OVERDRAFTS AND OVERDRAFT FEES.**

As a convenience to our valued Customers, we offer an overdraft service called *TD Debit Card Advance$^{SM}$* with our personal checking accounts. With this option, we may authorize debit card purchases or ATM transactions even when you do not have enough money available in your account so you may be able to complete your transaction, but it may result in a fee. **We do not authorize and pay such overdrafts unless you choose to enroll in TD Debit Card Advance. If you want TD Bank to authorize and pay overdrafts on your ATM and one-time debit card transactions (or change your enrollment status at any time), stop by any TD Bank, call us at 1-888-751-9000, or connect to bank.com.** Please read below for information about our overdraft practices.

Exh. B, p. 2.

14.    TD Bank continues as follows:

**Overview**

An <u>overdraft</u> occurs when you do not have enough money available in your account to cover a transaction, but we pay it anyway.  We can cover your overdrafts in two different ways.

1. We have standard overdraft practices that come with your account.
2. We also offer <u>overdraft protection plans</u>, such as a link to a savings account, which may be less expensive than our standard overdraft practices.  To learn more, ask us about these plans.

This notice explains our standard overdraft practices.

**STANDARD OVERDRAFT PRACTICES**

**What are the <u>standard overdraft practices</u> that come with my account?**

We may, at our discretion, authorize and pay overdrafts for the following types of transactions:

5

• Checks and other transactions made using your checking account number
• Automatic bill payments
• Online Banking transfers and payments made through Bill Pay
• Recurring debit card transactions
• External transfers to other institutions and payments to other people
• Telephone Transfers

We may not authorize and pay overdrafts for the following types of transactions unless you ask us to:
• One-time debit card transactions.
• ATM transactions.

Exh. B, p. 2.

If you want TD Bank to authorize and pay overdrafts on these transactions, enroll in TD Debit Card Advance.

If we do not authorize and pay an overdraft, your transaction will be declined.

If a merchant receives authorization for a purchase, TD Bank can not return that transaction unpaid even if your account is not in good standing.

We pay overdrafts at our discretion, which means we do not guarantee that we will always authorize and pay any type of transactions.

For example, we typically do not pay overdrafts if your account is not in good standing, or you are not making regular deposits, or you repeatedly overdraft.

Exh. B, p. 3.

15.     In the TD Simple Checking Account Guide (the version dated August 2014 appears to be applicable and has been cited hereinafter and attached as Exhibit C), TD Bank represents the following with respect to "Overdraft options for Customers with debit cards":

| Option A (default) – You do not enroll in TD Debit Card Advance$^{SM}$ | This means your account is set up to decline any ATM or one-time debit card transactions that may overdraw your account. Since these transactions will be declined when you have insufficient available funds, you will not be charged the overdraft-paid fees for ATM or one-time debit card transactions. We may authorize and pay overdrafts for other transaction types. |
|---|---|
| Option B – You enroll in TD Debit Card | This means you choose to allow TD Bank to |

| Advance | authorize one-time debit card purchases and ATM transactions when you do not have enough money available in your account. Whether an overdraft will be paid is at our discretion, and we reserve the right not to pay. **$35 each time we pay an overdraft, up to 5 overdraft fees per Business Day.** |
|---|---|

Exh. C, p. 2; *see also* TD Premier Checking<sup>SM</sup> Account Guide (dated August 2014) (attached hereto as Exhibit D); *see also* TD Convenience Checking<sup>SM</sup> Account Guide (dated August 2014) (attached hereto as Exhibit E).

16.     TD Bank represents the following in its Frequently Asked Questions:

**What happens to my debit card withdrawals and purchases if I don't enroll in TD Debit Card Advance?**

If you do not choose to enroll in TD Debit Card Advance, your one-time debit or ATM transactions may be declined the moment you swipe your card if you do not have enough money available in your checking account and no fee will be assessed. We may authorize and pay overdrafts for your other transaction types at our discretion.

*See* TD Bank Webpage (found at http://www.tdbank.com/popup/TDAFAQ.html) (attached hereto as Exhibit F).

17.     Thus, if at the time of the transaction there is not enough money in the account, the transaction should be declined by TD and at the point of sale.  However, TD Bank authorizes the Uber and Lyft transactions that put the account into overdraft and the transaction goes through, depleting the consumer's account to below negative.  TD Bank is not allowed to charge an overdraft fee for the offending transaction as it promises in its PDAA, the "Important Information for Consumers About Your TD Bank Checking Account" brochure incorporated therein, its Checking Account Guides, and other marketing materials; however, TD Bank does assess an overdraft fee in the amount of $35.00.

18.     In connection with the marketing of its bank accounts, Defendant represents that,

as part of its standard overdraft practices that come with the TD Bank accounts, it will decline one-time debit card transactions at the point of sale that put the account into overdraft and will not charge overdraft fees on such one-time debit card transactions; however, Defendant does not decline at the point of sale one-time debit card Uber and Lyft transactions that put an account into overdraft and, in fact, charges an overdraft fee on such one-time debit card transactions.

19.     Furthermore, even though Defendant promises customers who do not opt into Debit Card Advance that it will not authorize one-time debit card transactions that would put an account in overdraft and will not assess an overdraft fee, Defendant, as a matter of bank policy, does authorize one-time Uber and Lyft ride transactions that put an account into overdraft and does charge accountholders overdraft fees based on them.

20.     TD Bank knows or should know that people transacting for a one-time ride are making a one-time purchase.

21.     Uber represented that "the recurring note on your statement is your bank's interpretation that your card is on file with our payment processor."

22.     In particular, in or about May of 2016, Uber had the following representation on its website, which has subsequently been removed:



## NAMED PLAINTIFF FACTS

23.     Plaintiff became a TD Bank customer and contracted with TD as embodied in the PDAA and the "Important Information for Consumers About Your TD Bank Checking Account" brochure incorporated by reference therein.  Plaintiff's PDAA and incorporated brochure contain a promise that TD will decline one-time debit card transactions that put the account into overdraft and will not assess overdraft fees on any one-time debit card transactions.  At all relevant times, Plaintiff declined to opt her account into TD Debit Card Advance.  As a result, one-time debit card transactions that put her account into overdraft should be declined at the point of sale and she should not incur overdraft fees based on any such transactions.  This is not what has occurred.

24.     For example, on or about March 14, 2016, Plaintiff made a one-time payment with her TD Bank debit card to Uber in the amount of $7.53 for an Uber ride and, on or about March 14, 2016, Plaintiff made a one-time payment with her TD Bank debit card to Uber in the amount of $8.21 for an Uber ride.

25.     Instead of declining the two transactions, TD Bank approved the transactions and Uber processed the payments, putting Plaintiff's account into overdraft.

26.     On or about March 15, 2016, TD Bank charged Plaintiff two $35.00 overdraft fees for the one-time debit card transactions with Uber and seized the $70.00 from the next deposit made to her account.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this action individually and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23.  The Classes include:

**The National Class**

All holders of a TD Bank, N.A. checking and/or money market account who, within the applicable statutes of limitations preceding the filing of this lawsuit, incurred one or more overdraft fees on Uber or Lyft transactions while not enrolled in TD Debit Card Advance.

**The Connecticut Class**

All holders of a TD Bank, N.A. checking and/or money market account in Connecticut who, within the applicable statutes of limitations preceding the filing of this lawsuit, incurred one or more overdraft fees on Uber or Lyft transactions while not enrolled in TD Debit Card Advance.

28.     Excluded from the Classes are:

a.      Defendant and any entities in which Defendant has a controlling interest;

b.      Any entities in which Defendant's officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendant;

c.      All current employees of Defendant;

d.      The Judge(s) to whom this case or any transferred case is assigned and any member of the Judges' immediate family and any other judicial officer assigned to this case or any transferred case;

e.      Any attorneys representing Plaintiff or the Classes; and

f.      All governmental entities.

29.     Plaintiff reserves the right to modify or amend the definitions of the proposed Classes and/or to add Subclasses if necessary before the Court determines whether certification is appropriate and as the Court may otherwise allow.

30.     This case is properly brought as a class action under Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and (c)(4), and all requirements therein are met for the reasons set forth in the following paragraphs.

31.     **Numerosity.  Fed. R. Civ. P. 23(a)(1).**  The members of the Classes are so

numerous that separate joinder of each member is impracticable.  While Plaintiff does not know the exact number of Class members, Plaintiff believes there are (at least) thousands of members in each Class, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to TD Bank's records.   Undoubtedly, individual joinder in this case is impracticable.  TD Bank has the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiff.  More than one thousand Class members is sufficient to satisfy numerosity under Fed. R. Civ. P. 23(a)(1).

32.    **Commonality and Predominance.  Fed. R. Civ. P. 23(a)(2) and (b)(3)**.  There are several questions of law and fact common to the claims of Plaintiff and the members of the Classes.   All of the members of the Classes' claims are based upon the same facts and circumstances.  Fed. R. Civ. P. 23(a)(3).  The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members of the Classes. The resolution of common questions in this case will resolve the claims of both Plaintiff and the Classes.  Common questions include, but are not limited to, the following:

a.    Whether TD Bank improperly charges overdraft fees on one-time debit card transactions for Uber and/or Lyft rides;

b.    Whether TD Bank breaches the PDAA, including through incorporation by reference of the "Important Information for Consumers About Your TD Bank Checking Account" brochure, or Account Guide by charging an overdraft fee on one-time debit card transactions for Uber and/or Lyft rides;

c.    Whether TD Bank engages in unfair and/or deceptive trade practices in violation of the New Jersey Consumer Fraud Act, the Connecticut Unfair Trade Practices Act, and/or

various other states' unfair and/or deceptive trade practices acts by engaging in the trade practices alleged herein; and/or

      d.      Whether Plaintiff and other members of the Classes have been damaged as a result of TD Bank's wrongful business practices described herein, and the proper measure of damages.

      33.      **Typicality.  Fed. R. Civ. P. 23(a)(3)**.  The claims of Plaintiff are typical of the claims of the respective Classes.  The claims of the Plaintiff and the respective Classes are based on the same legal theories and arise from the same unlawful and willful conduct of Defendant, resulting in the same injury to the Plaintiff and the respective Classes.  Plaintiff and all members of the Classes are similarly affected by Defendant's wrongful conduct and were damaged in the same way.

      34.      **Adequacy.  Fed. R. Civ. P. 23(a)(4).**  Plaintiff is an adequate representative of the Classes because Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes.  Plaintiff falls within each class definition and Plaintiff's interests do not conflict with the interests of the members of the Classes Plaintiff seeks to represent.  Plaintiff is passionate about this litigation personally and will prosecute this action vigorously for the benefit of the members of the Classes.  Plaintiff has proven herself to be active and involved as a class representative in separate litigation against TD Bank.  Plaintiff is represented by experienced and able attorneys from coordinated law firms.  Plaintiff's counsel are competent and experienced in the prosecution of class action litigation, and Plaintiff's counsel intends to prosecute this action vigorously for the benefit of the members of the Classes. Indeed, several lawyers representing Plaintiff have litigated other class actions against TD Bank, some of which have lasted years.  Plaintiff and her counsel can fairly and adequately protect the

interests of all of the members of the Classes.  Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Classes.

35.    **Superiority.  Fed. R. Civ. P. 23(b)(3).**  Class action treatment is a superior method for the fair and efficient adjudication of this controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

36.    Pursuing this litigation without the Class action vehicle would require litigation of claims that, in view of the expense of the litigation, may be insufficient in amount to support separate actions.  Individual litigation of each member of the Classes' claims would be impracticable and individual litigation would be unduly burdensome to the courts.  Without the class action vehicle, the Classes would have no reasonable remedy and would continue to suffer losses, as Defendant continues to engage in the bad faith, unlawful, unfair, and deceptive conduct that is the subject of this Complaint, and Defendant would be permitted to retain the proceeds of its breaches.  Absent a class action, the members of the Classes would find the cost of litigating their claims to be prohibitive, and will have no effective remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

37.     **Injunctive and Declaratory Relief is Appropriate.  Fed. R. Civ. P. 23(b)(1).**
The prosecution of separate actions by individual members of the Classes would create a risk of:

a.      Inconsistent or varying adjudications with respect to individual members of the respective Classes which would establish incompatible standards of conduct for the Defendant; and

b.      Adjudications with respect to individual members of the respective Classes which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

38.     **Policies Generally Applicable to the Classes.   Fed. R. Civ. P. 23(b)(2)**.
Defendant has acted or refused to act on grounds generally applicable to the classes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes, and making final injunctive relief appropriate with respect to each of the Classes as a whole.  Defendant's practices challenged herein apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinge on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

39.     **Certification of Particular Issues.  Fed. R. Civ. P. 23(c)(4).**  Issue certification is also appropriate because the following particular issues (among others) exist that may be brought or maintained as a class action:

a.      Whether TD Bank improperly charges overdraft fees on one-time debit card transactions for Uber and/or Lyft rides;

b.      Whether TD Bank breaches the PDAA, including through incorporation by reference of the "Important Information for Consumers About Your TD Bank Checking

Account" brochure, or Account Guide by charging an overdraft fee on one-time debit card transactions for Uber and/or Lyft rides;

c.     Whether TD Bank engages in unfair and/or deceptive trade practices in violation of the New Jersey Consumer Fraud Act, the Connecticut Unfair Trade Practices Act, and/or various other states' unfair and/or deceptive trade practices acts by engaging in the trade practices alleged herein; and/or

d.     Whether Plaintiff and other members of the Classes have been damaged as a result of TD Bank's wrongful business practices described herein, and the proper measure of damages.

40.     All conditions precedent to bringing this action have been satisfied and/or waived.

## CAUSES OF ACTION

### COUNT I

### BREACH OF CONTRACT

**(On Behalf of Plaintiff and the National and Connecticut Class)**

41.     Plaintiff realleges and incorporates by reference each of the preceding allegations as if fully set forth herein.

42.     Plaintiff alleges this claim individually and on behalf of the National Class and Connecticut Class.

43.     Plaintiff and TD Bank contracted for checking account and debit card services, as embodied in the PDAA, including those documents incorporated by reference therein, including the "Important Information for Consumers About Your TD Bank Checking Account" brochure.

44.     The PDAA states that TD Bank will not assess overdraft fees on any one-time debit card transactions.

45. TD Bank breached the contract when it charged overdraft fees on one-time debit card transactions for Uber and/or Lyft rides.

46. Plaintiff and members of the Classes have performed all of the obligations imposed on them pursuant to the PDAA, including those documents incorporated by reference therein.

47. Plaintiff and members of the putative Classes have sustained monetary damages as a result of Defendant's breach.

### COUNT II

### VIOLATION OF
### THE NEW JERSEY CONSUMER FRAUD ACT, N.J.S.A. §§ 56:8-1, *et seq.*
### (On Behalf of All Classes)

48. Plaintiff realleges and incorporates by reference each of the preceding allegations as if fully set forth herein.

49. Plaintiff brings this Count on behalf of the Nationwide Class and the Connecticut Class.

50. The New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq.* ("NJ CFA" or "act"), prohibits unconscionable commercial practices, false promises, misrepresentations, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise.

51. In the course of Defendant's business, Defendant violated the act by willfully failing to disclose and actively concealing that (a) Defendant will not decline one-time debit Uber or Lyft transactions of consumers that put a consumer's account into overdraft; and that (b) Defendant will instead allow the Uber or Lyft transaction to go through and impose a $35.00

16

overdraft fee.

52.     In addition, in connection with the marketing of its bank accounts, Defendant's representation that, as part of its standard overdraft practices that come with the TD accounts, it will decline one-time debit card transactions at the point of sale that put the account into overdraft and will not charge overdraft fees on such one-time debit card transactions constitutes unconscionable, unfair, deceptive, and/or misleading business practice in violation of the consumer protection statute because Defendant does not decline at the point of sale one-time debit card Uber and Lyft transactions that put an account into overdraft and charge an overdraft fee on such one-time debit card transactions.

53.     Defendant further violated the act by misrepresenting that: (a) Defendant will decline one-time debit card transactions of consumers that put a consumer's account into overdraft; and (b) Defendant will not allow the one-time debit card transactions to go through; and (c) will not impose a $35.00 overdraft fee – when, in fact –  (i) Defendant will not decline one-time debit Uber or Lyft transactions of consumers that put a consumer's account into overdraft; and (ii) Defendant will instead allow the one-time debit card Uber or Lyft transaction to go through and impose a $35.00 overdraft fee.

54.     Defendant further violated the act by advertising its accounts and its standard overdraft service as part of a plan or scheme not to sell the item or service so advertised.  In particular, Defendant promised that its accounts with standard overdraft status would decline one-time debit card transactions that put an account into overdraft and would not charge an overdraft fee.  Instead, the TD accounts with standard overdraft status provided to Plaintiff and the Classes fail to decline one-time debit card Uber and Lyft transactions that put an account into overdraft.  Additionally, the TD account is different than what was advertised because it charges

an overdraft fee on Uber or Lyft transactions that put an account into overdraft when such a transaction goes through.

55.     Defendant further violated the act by advertising its accounts and its standard overdraft service as part of a plan or scheme not to sell the item the advertised price.  Defendant advertised that its bank accounts with standard overdraft practices would not to charge an overdraft fee on a one-time debit card transaction that puts an account into overdraft status. Instead, Defendant charges $35.00 per overdraft on Uber and Lyft one-time debit card transactions that put an account into overdraft.

56.     By failing to disclose that one-time debit card transactions with Uber or Lyft will be subject to overdraft fees, even though they are not recurring transactions, and that the transactions will go through and not be declined, and that the consumer will be charged an overdraft fee, Defendant engaged in an unconscionable, unfair, deceptive, and/or misleading business practice.

57.     Further, Defendant's acts and practices described herein offend established public policy because the harm they cause to consumers outweighs any benefit associated with such practices, and because Defendant fraudulently concealed the true nature of its practices.

58.     Defendant's actions as set forth above occurred in the conduct of trade or commerce.

59.     Defendant's unconscionable, unfair, fraudulent, and/or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

60.     Defendant intentionally and knowingly misrepresented and/or intentionally and knowingly omitted material facts regarding its accounts and its overdraft practices with an intent to mislead Plaintiff and the Classes.

61.     Defendant knew or should have known that its conduct violated the New Jersey CFA.

62.     Defendant owed Plaintiff and the Classes a duty to disclose the truth about its bank accounts with standard overdraft practices because Defendant:

a.      Possessed exclusive knowledge that (i) Defendant will not decline one-time debit Uber or Lyft transactions of consumers that put a consumer's account into overdraft; and (ii) Defendant will instead allow the Uber or Lyft transaction to go through and impose a $35.00 overdraft fee.

b.      Intentionally concealed the foregoing from Plaintiff and the Classes; and/or

c.      Made incomplete representations that it will decline one-time debit card transactions that put an account into overdraft and not charge an overdraft fee on one-time debit card transactions that put an account into overdraft, while purposefully withholding material facts from Plaintiff and the Classes that contradicted these representations, namely that Defendant will not decline Uber or Lyft one-time debit card transactions that put an account into overdraft and that Defendant will charge an overdraft fee on Uber or Lyft one-time debit card transactions that put an account into overdraft.

63.     Defendant had a duty to disclose that (i) Defendant will not decline one-time debit card Uber or Lyft transactions of consumers that put a consumer's account into overdraft; and (ii) Defendant will instead allow the Uber or Lyft transaction to go through and impose a $35.00 overdraft fee, because Plaintiff and the other members of the Classes relied on Defendant's material representations that (i) Defendant will decline one-time debit card transactions of consumers that put a consumer's account into overdraft; and (ii) Defendant will not allow the one-time debit card Uber or Lyft transaction to go through; and (iii) Defendant will not impose a

$35.00 overdraft fee.

64.     Defendant's conduct proximately caused injuries to Plaintiff and the other members of the Classes.

65.     Plaintiff and the other members of the Classes were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff's and the other Class members' one-time debit card transactions for Uber or Lyft rides should have been declined at the point of sale and Plaintiff and the other members of the Classes would not have been charged an overdraft fee.

66.     These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

67.     Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

68.     Pursuant to N.J.S.A. § 56:8-20, Plaintiff will serve the New Jersey Attorney General with a copy of this Complaint within 10 days of filing.

## <u>COUNT III</u>

**CONNECTICUT UNFAIR TRADE PRACTICES ACT**
**CONN. GEN. STAT. ANN. § 42-110b(a)**
**(On Behalf of Plaintiff and the Connecticut Class)**

69.     Plaintiff realleges and incorporates by reference each of the preceding allegations as if fully set forth herein.

70.     Plaintiff brings this Count on behalf of the Connecticut Class.

71.     Plaintiff and Defendant are each "persons" as defined by CONN. GEN. STAT. ANN. § 42-110a(3).

72.     The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  CONN. GEN. STAT. ANN. § 42-110b(a).

73.     The Connecticut UTPA further provides a private right of action under CONN. GEN. STAT. ANN. § 42- 110g(a).  In the course of Defendant's business, it willfully failed to disclose and actively concealed that (a) Defendant will not decline one-time debit Uber or Lyft transactions of consumers that put a consumer's account into overdraft; and (b) Defendant will instead allow the Uber or Lyft transaction to go through and impose a $35.00 overdraft fee.

74.     In addition, in connection with the marketing of its bank accounts, Defendant's representation that, as part of its standard overdraft practices that come with the accounts, it will decline one-time debit card transactions at the point of sale that put the account into overdraft and that Defendant will not charge overdraft fees on such one-time debit card transactions constitutes unconscionable, unfair, deceptive, and/or misleading business practice.

75.     Defendant fraudulently concealed the fact that (a) Defendant will not decline one-time debit Uber or Lyft transactions of consumers that put a consumer's account into overdraft; and (b) Defendant will instead allow the Uber or Lyft transaction to go through and impose a $35.00 overdraft fee.

76.     Defendant has also engaged in deceptive conduct because (1) it made representations, omissions, and/or engaged in other conduct likely to mislead consumers; (2) consumers interpret the message reasonably under the circumstances; and (3) the misleading representation, omission, or practice is material – that is, likely to affect consumer decisions or conduct.

77.     In opening a TD account and declining enrollment into TD Debit Card Advance,

21

Plaintiff and the other Connecticut Class members were deceived by Defendant's failure to disclose that (a) Defendant will not decline one-time debit Uber or Lyft transactions of consumers that put a consumer's account into overdraft; and (b) Defendant will instead allow the Uber or Lyft transaction to go through and impose a $35.00 overdraft fee.

78.     Additionally, Defendant engaged in an unlawful practice in violation of the Connecticut UTPA by advertising its account with standard overdraft service as part of a plan or scheme not to sell the item or service so advertised.  In particular, Defendant promised that its account and standard overdraft practice would decline one-time debit card transactions that put an account into overdraft and would not charge an overdraft fee.  Instead, the account and standard overdraft practices provided to Plaintiff and the Classes fail to decline one-time debit card Uber and Lyft transactions that put an account into overdraft.  Additionally, the account and standard overdraft practices provided to Plaintiff and the Classes are different than advertised because they charge an overdraft fee on Uber or Lyft transactions that put an account into overdraft when such a transaction goes through.

79.     Additionally, Defendant engaged in an unlawful practice in violation of the Connecticut UTPA by advertising its account and its standard overdraft service as part of a plan or scheme not to sell the item the advertised price.  Defendant advertised its bank account and standard overdraft practices that it would not to charge an overdraft fee on a one-time debit card transaction that puts an account into overdraft status.  Instead, Defendant charges $35.00 per overdraft on Uber and Lyft one-time debit card transactions that put an account into overdraft.

80.     By failing to disclose that one-time debit card transactions with Uber or Lyft, even though non-recurring, will go through even against a negative balance, and the consumer will be charged an overdraft fee, Defendant engaged in an unconscionable, unfair, deceptive,

and/or misleading business practice.

81.     Accordingly, Defendant engaged in unfair and deceptive trade practices because its conduct (1) offends public policy as it has been established by statutes, the common law, or other established concept of unfairness, (2) is immoral, unethical, oppressive, or unscrupulous; and/or (3) causes substantial injury to consumers, competitors, or other business persons.  The harm caused to consumers outweighs any benefit associated with such practices.

82.     Plaintiff and the Connecticut Class members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception. Plaintiff and the Connecticut Class members did not, and could not, unravel Defendant's deception on their own.

83.     Defendant's actions as set forth above occurred in the conduct of trade or commerce.

84.     Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

85.     Defendant intentionally and knowingly misrepresented and/or intentionally and knowingly omitted material facts regarding the nature of its accounts and the nature of TD Bank's standard overdraft practices with an intent to mislead Plaintiff and the Connecticut Class.

86.     Defendant knew or should have known that its conduct violated the Connecticut UTPA.

87.     Defendant owed Plaintiff and the Connecticut Class a duty to disclose the truth about its accounts and standard overdraft practices because Defendant:

a.      Possessed exclusive knowledge that (i) Defendant will not decline one-time debit

Uber or Lyft transactions of consumers that put a consumer's account into overdraft; and (ii) Defendant will instead allow the Uber or Lyft transaction to go through and impose a $35.00 overdraft fee;

b.     Intentionally concealed the foregoing from Plaintiff and the Connecticut Class; and/or

c.     Made incomplete representations that it will decline one-time debit card transactions that put an account into overdraft and not charge an overdraft fee on one-time debit card transactions that put an account into overdraft, while purposefully withholding material facts from Plaintiff and the Classes that contradicted these representations, namely that Defendant will not decline Uber or Lyft one-time debit card transactions that put an account into overdraft and will charge an overdraft fee on Uber or Lyft one-time debit card transactions that put an account into overdraft.

88.     Defendant had a duty to disclose that (i) Defendant will not decline one-time debit card Uber or Lyft transactions of consumers that put a consumer's account into overdraft; and (ii) Defendant will instead allow the Uber or Lyft transaction to go through and impose a $35.00 overdraft fee, because Plaintiff and the other Connecticut Class members relied on Defendant's material representations that (i) Defendant will decline one-time debit card transactions of consumers that put a consumer's account into overdraft; and (ii) Defendant will not allow the one-time debit card Uber or Lyft transaction to go through; and (iii) will not impose a $35.00 overdraft fee.

89.     Defendant's conduct proximately caused injuries to Plaintiff and the other Connecticut Class members.

90.     Plaintiff and the other Connecticut Class members were injured and suffered

ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff's and the other Class members' one-time debit card transaction for an Uber or Lyft ride should have been declined at the point of sale and Plaintiff and the other Class members would not have been charged an overdraft fee.

91.     These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

92.     Defendant's violations present a continuing risk to Plaintiff as well as the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

93.     Plaintiff and the other Class members sustained damages as a result of Defendant's unlawful acts, and are therefore entitled to damages and other relief as provided under the Connecticut UTPA.

94.     Plaintiff also seeks court costs and attorneys' fees as a result of Defendant's violation of the Connecticut UTPA as provided in CONN. GEN. STAT. ANN. § 42-110g(d).  A copy of this Complaint has been mailed to the Attorney General and the Commissioner of Consumer Protection of the State of Connecticut in accordance with CONN. GEN. STAT. ANN. § 42-110g(c).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf all others similarly situated, prays for judgment against Defendant granting the following relief:

a.     Certifying this case as a class action pursuant to Fed. R. Civ. P. 23;

b.     Appointing Plaintiff as representative for the Classes;

c.     Appointing Plaintiff's Counsel as Class Counsel to represent the Classes;

d.     Awarding actual and/or statutory damages for injuries suffered by Plaintiff and

the Classes in the maximum amount permitted by applicable law (including twice the amount of usurious interest paid);

e.    Awarding all recoverable compensatory and other damages sustained by Plaintiff and the Classes;

f.    Awarding restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

g.    An order (1) requiring Defendant to immediately cease its wrongful conduct as set forth above; (2) enjoining Defendant from continuing to conceal material information and conduct business via the unlawful, unfair, deceptive, and/or misleading business acts and practices complained of herein; (3) ordering Defendant to engage in a corrective notice campaign; and/or (4) requiring Defendant to refund to Plaintiff and all members of the Classes any overdraft fees charged on one-time debit card transactions for Uber and/or Lyft rides;

h.    Statutory pre-judgment and post-judgment interest on any amounts;

i.    Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and/or

j.    Such other relief as the Court may deem just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

95.    Plaintiff, individually and on behalf of all others similarly situated, demands a trial by jury on all causes of action so triable.

Dated:   December 5, 2017              Respectfully Submitted,

                          By:     s/Joseph G. Sauder
                                  Joseph G. Sauder (NJ Bar No. 030791998)
                                  Matthew D. Schelkopf (NJ Bar No. 030362002)
                                  MCCUNE WRIGHT AREVALO, LLP
                                  555 Lancaster Avenue
                                  Berwyn, Pennsylvania 19312
                                  Tele: (610) 200-0339
                                  Email: jgs@mccunewright.com
                                          mds@mccunewright.com

                                  Richard D. McCune (Pro Hac Vice Admission to be filed)
                                  Michele M. Vercoski (NJ Bar No. 031012004)
                                  Jae K. "Eddie" Kim (Pro Hac Vice Admission to be filed)
                                  MCCUNE WRIGHT AREVALO, LLP
                                  3281 East Guasti Road, Suite 100
                                  Ontario, California 91761
                                  Tele: (909) 557-1250
                                  Email: rdm@mccunewright.com
                                          mmv@mccunewright.com
                                          jkk@mccunewright.com

                                  E. Adam Webb (Pro Hac Vice Admission to be filed)
                                  G. Franklin Lemond (Pro Hac Vice Admission to be filed)
                                  WEBB, KLASE & LEMOND, LLC
                                  1900 The Exchange, SE, Suite 480
                                  Atlanta, Georgia 30339
                                  Tele: (770) 444-0773
                                  Email:  Adam@WebbLLC.com
                                          Franklin@WebbLLC.com

                                  Jeff Ostrow (Pro Hac Vice Admission to be filed)
                                  Jonathan M. Streisfeld (Pro Hac Vice Admission to be filed)
                                  KOPELOWITZ OSTROW
                                  FERGUSON WEISELBERG GILBERT
                                  1 West Las Olas Blvd., 5th Floor
                                  Ft. Lauderdale, Florida 33301
                                  Tele: (954) 525-4100
                                  Email:  ostrow@kolawyers.com
                                          streisfeld@kolawyers.com

                                  Hassan A. Zavareei (Pro Hac Vice Admission to be filed)
                                  TYCKO & ZAVAREEI LLP
                                  2000 L Street, N.W., Suite 808
                                  Washington, D.C. 20036
                                  Tele: (202) 973-0900
                                  Email:  hzavareei@tzlegal.com

Jeffrey D. Kaliel *(Pro Hac Vice Admission to be filed)*
KALIEL PLLC
1875 Connecticut Avenue NW, 10th Floor
Washington, DC  20009
Tele: (202) 615-3948
Email: jkaliel@kalielpllc.com

Taras Kick *(Pro Hac Vice Admission to be filed)*
THE KICK LAW FIRM
815 Moraga Drive
Los Angeles, California 90049
Tele: (310) 395-2988
Email: Taras@kicklawfirm.com

Francis J. "Casey" Flynn, Jr. *(Pro Hac Vice Admission to be filed)*
LAW OFFICE OF FRANCIS J. FLYNN, JR.
6220 West Third St. #115
Los Angeles, California 90036
Email: francisflynn@gmail.com

Corey D. Sullivan *(Pro Hac Vice Admission to be filed)*
SULLIVAN LAW & ASSOCIATES
1336 E. Allendale Drive
Bloomington, Indiana 47401
Email: sullivcd@gmail.com

Tiffany M. Yiatras *(Pro Hac Vice Admission to be filed)*
CONSUMER PROTECTION LEGAL, LLC
308 Hutchinson Road
Ellisville, Missouri  63011
Tele: (314) 541-0317
Email: tiffany@consumerprotectionlegal.com

**ATTORNEYS FOR PLAINTIFF AND PROPOSED CLASSES**